**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      No. CR 04-311 JB

VANESSA AGUILAR,

        Defendant.

## MEMORANDUM ORDER AND OPINION

**THIS MATTER** comes before the Court on Ms. Aguilar's Sentencing Memorandum, filed February 25, 2005 (Doc. 95). The Court considered the memorandum at Aguilar's sentencing hearings on March 2, 2005. The primary issues are: (i) whether Aguilar should receive an upward adjustment under U.S.S.G. § 2D1.1(b)(1); (ii) whether she is eligible for the safety valve provisions of 18 U.S.C. § 3553(f); (iii) whether Aguilar was a minimal participant or a minor participant; and (iv) whether a deviation from the United States Sentencing Guidelines is appropriate. Because the Court concludes: (i) that Aguilar should receive the § 2D1.1(b)(1) upward adjustment; (ii) that Aguilar is eligible for the safety valve; (iii) that Aguilar was a minimal/minor participant; and (iv) that a guideline sentence is reasonable, the Court will sentence Aguilar to a thirty-three month term of incarceration.

## BACKGROUND

On November 11, 2003, a Border Patrol agent observed a white Ford Thunderbird traveling on New Mexico Highway 80 near Lordsburg, New Mexico. See Pre-sentence Investigation Report ¶ 1, at 2 ("PSR"). The vehicle contained three passengers, Aguilar, Armando Mendez, and an

unidentified male.  See id. ¶ 15, at 4. The Border Patrol agent observed that the vehicle was riding low and contained two large square packages consistent with the size and packaging of narcotics. See id. ¶ 14, at 4.  The agent also observed that the vehicle's trunk was not level, as if overloaded, and there was twine protruding from the trunk.  See id.  The Border Patrol agent stopped the vehicle to conduct an immigration check.  See id. ¶ 15, at 4.  As Mendez exited the vehicle's driver's seat, he indicated that he had a firearm in the vehicle.  See id.  While the agent was removing Aguilar from the vehicle, the unidentified male bolted out of the vehicle and ran into the open desert.  See id.

Border Patrol searched the vehicle, recovering seven large bundles of a green leafy substance, a loaded Colt 1911 .45 caliber handgun, a two way radio, a cellular telephone, and a small bag containing a green leafy substance.  See id. ¶ 16, at 5.  The gun was found in a black bag, located on the floor in front of the passenger's seat.  See Transcript of Hearing at 19:25 - 20:6 (executed February 28, 2005).[1]  Aguilar acknowledges ownership of the bag, but represents that the gun belonged to Mendez.  See id. at 20:5-6.  She testified that, before Border Patrol stopped their car, the gun was between the vehicle's console and Mendez' seat.  See id. at 15:5-14; id. at 17:3-9.  As the Border Patrol agent pulled the vehicle over, however, Mendez placed the gun in the Aguilar's bag.  See id. at 15:5-14.  Aguilar testified that she knew Mendez had a gun.  See id. at 17:10-15.  She also testified that she never touched the gun, and that, although she physically could have grabbed it, she never tried to touch it and did not believe Mendez would allow her to do so.  See id. at 18:8-15.

Count I of the Indictment charges Aguilar with Conspiracy to Possess with Intent to

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

Distribute 100 Kilograms or more of Marijuana, in violation of 21 U.S.C. § 846.  See Indictment, at 1-2, filed February 19, 2004 (Doc. 28).  Count II charges Aguilar with Conspiracy to Possess with Intent to Distribute 100 Kilograms or more of Marijuana and Aiding and Abetting in violation of 21 U.S.C. §§ 841(a),(b) and (b)(1)(B).  See Indictment, at 2.  On July 19, 2004, Aguilar pled guilty to both counts.

The PSR assigned a base offense level of 26 and a criminal history category of I.  The PSR indicates that during the search of the vehicle, agents found a loaded handgun in a small gym bag on the passenger floor board.  The PSR indicates that Aguilar is not eligible for a two-level decrease pursuant to § 2D1.1(b)(6) of the Guidelines because Aguilar possessed a firearm in connection with the offense.   The PSR also concludes that a two-level enhancement is warranted for the firearm possession.  The PSR concludes that a minimal/minor role adjustment is not warranted.  It also assigns a three-level reduction for acceptance of responsibility.  The PSR calculates a total offense level of twenty-five.  The corresponding guideline sentence is 57 to 71 months.  The statute of conviction, however, requires a minimum term of five years.

Aguilar filed a sentencing memorandum, arguing: (i) that the § 2D1.1(b)(1) upward adjustment should not be applied here; (ii) that she is not ineligible for a safety valve reduction; (iii) that she was a minimal participant or a minor participant; and (iv) that under United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), the Court has discretion to consider the totality of Aguilar's circumstances. The Court first considered Aguilar's sentencing memorandum at a sentencing hearing on February 28, 2005.  At that hearing, the Court concluded: (i) that Aguilar should receive the § 2D1.1(b)(1) upward adjustment; (ii) that Aguilar was ineligible for the safety valve; (iii) that Aguilar was not a minimal or minor participant; and (iv) that Aguilar's offense level was 25 and her guideline

range was sixty to seventy-one months.  The Court sentenced Aguilar to a sixty-month term of incarceration.

After Aguilar's sentencing, the Court reviewed case law from the United States Court of Appeals for the Tenth Circuit and became concerned about Aguilar's sentence.  The Court held another sentencing hearing on the afternoon of February 28, 2005.  At that hearing, the Court concluded: (i) that Aguilar should receive the § 2D1.1(b)(1) upward adjustment; (ii) that Aguilar was eligible for the safety valve; (iii) that Aguilar was a minimal/minor participant; and (iv) that a guideline sentence was reasonable.  The Court concluded that Aguilar's offense level was 20 and her guideline range was thirty-three to forty-one months.  The Court sentenced Aguilar to a thirty-three month term of incarceration.

## LAW ON § 2D1.1(b)(1)

Section 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during an offense involving drugs.  U.S.S.G. § 2D1.1(b)(1). The "plain language of section 2D1.1(b)(1) and its commentary permit a trial judge to enhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the offense."  United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992).  "Possession of a weapon in connection with a drug trafficking offense is established if the government proves by a preponderance of the evidence that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant."  See United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998)(internal quotation omitted).  "Once the government establishes that the gun was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to show it is clearly improbable that the weapon was related to the

offense."  Id. (internal quotation omitted).  "The necessary nexus of the weapon, drug trafficking, and defendant may be established by showing that 'the weapon was located nearby the general location where drugs or drug paraphernalia are stored or where part of the transaction occurred.'"  United States v. Ward, 96 Fed. Appx. 615, 627 (10th Cir. April 9, 2004)(unpublished)(quoting United States v. Flores, 149 F.3d at 1280)(vacated on other grounds by Gaither v. United States, 125 S. Ct. 1002 ( 2005).

## THE "SAFETY VALVE" EXCEPTION

18 U.S.C. § 3553(f) and § 5C1.2 of the Guidelines provide an exception to the statutory minimum sentences under 21 U.S.C. §§ 841, 844, 846, 960, or 963.[2]  If a defendant meets certain criteria, a court will impose a guideline sentence and not a statutory minimum sentence. See U.S.S.G. § 5C1.2(a).  The safety valve exception requires, among other things, that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  U.S.S.G. § 5C1.2(a)(2).

The Tenth Circuit requires "active possession" of  a firearm before the application of the safety valve will be precluded.  United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1187 (10th Cir. 2004).  Neither mere proximity to a firearm nor possession of a firearm by a co-conspirator will disqualify a defendant from safety valve eligibility.  See id. at 1086.  The Tenth Circuit directs courts to "focus on the defendant's own conduct for purposes of evaluating eligibility for the safety valve." Id. at 1087.

_____

[2] Section 5C1.2 of the Guidelines sets forth the criteria enumerated in 18 U.S.C. § 3553(f).

## MITIGATING ROLE ADJUSTMENT

Section 3B1.2 authorizes courts to reduce a defendant's offense level if the defendant was a minimal or minor participant in an offense.  U.S.S.G. § 3B1.2.  Commentary 3(A) indicates that any adjustment for mitigating role is for the "Substantially Less Culpable than Average Participant:" "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."  U.S.S.G. § 3B1.2, cmt. 3(A).  Commentary 3(C) confirms that the Court's task is a fact-based determination: The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted.  See id. at § 3B1.2, cmt. 3(C).

Although § 3B1.2(a) authorizes courts to find that a defendant was a minimal participant, the Guidelines make clear that courts are to do so infrequently.  See id. at § 3B1.2, cmt. 4.  Subsection (a) is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.  See id.  Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.  See id.

Section 3B1.2(b) authorizes courts to find that a defendant was a minor participant.  See id. at § 3B1.2(b).  Commentary 5 states that "Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal." Id. at § 3B1.2, cmt. 5**.**

## LAW ON SENTENCING

In <u>United States v. Booker</u>, the Supreme Court of the United States excised 18 U.S.C. §
3553(b), the provision of the Sentencing Reform Act that made the Guidelines mandatory.   <u>See</u>
<u>United States v. Booker</u>, 125 S.Ct. at 756-57 (Breyer, J.).  The Supreme Court indicated that the
Guidelines are "advisory."  <u>Id</u>.  <u>United States v. Booker</u> requires district courts to continue to consult
the Guidelines when formulating a sentence.  <u>See</u> <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727,
738 (10th Cir. 2005).  Judges must also consider the other factors set forth in 18 U.S.C. § 3553(a).
<u>See</u> <u>United States v. Booker</u>, 125 S.Ct. at 756-57.

Section 3553(a) sets out factors a court is to consider in imposing a sentence and directs
courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes
set forth in paragraph (2)."  18 U.S.C. § 3553(a).  Paragraph (2) indicates those purposes are:

[T]he need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and
to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  Section 3553(a) further directs courts to consider: (i) "the nature and
circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. §
3553(a)(1); (ii) "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); (iii) "the need to avoid
unwarranted sentence disparities among defendants with similar records who have been found guilty
of similar conduct," 18 U.S.C. § 3553(a)(6); and (iv) "the need to provide restitution to any victims

of the offense," 18 U.S.C. § 3553(a)(7).

**ANALYSIS**

Under the Guidelines, the Court believes that there is a preponderance of evidence warranting an upward adjustment for the presence of the gun.  Nevertheless, Aguilar remains eligible for the safety valve.  Also a minimum/minor role adjustment is appropriate.

**I.      AN UPWARD ADJUSTMENT BASED ON § 2D1.1(b)(1) IS SUPPORTED BY THE RECORD.**

Aguilar asserts that the Court should not apply an upward adjustment based on § 2D1.1(b)(1) because she did not possess the gun.  To establish possession for purposes of § 2D1.1(b)(1), however, the United States need only show " by a preponderance of the evidence that a temporal and spatial relationship existed between the weapon, the drug trafficking activity, and the defendant." See United States v. Flores, 149 F.3d at 1280 (internal quotation omitted).  The United States must show that the gun was possessed in proximity to the drug trafficking activity.  See United States v. Roberts, 980 F.2d at 6476.  Here, the gun was found in Aguilar's bag, on the floor in front of her seat, in the car containing the narcotics.  The gun was in the vehicle for the duration of the offense conduct.  The United States has shown the gun was possessed in proximity to the drug trafficking.

To rebut the United States' showing, Aguilar must demonstrate that "it is clearly improbable that the gun was related to the offense." Id.  Although Aguilar argues that she did not own the gun or ever touch it, what is critical is whether "the gun was related to the offense." Id.  Aguilar's conduct is not determinative because the question is whether the gun "was possessed," not whether Aguilar possessed it.  U.S.S.G § 2D1.1(b)(1).  See United States v. Zavalza-Rodriguez, 379 F.3d at 1186-87 (explaining that because §2D1.1(b)(1) uses passive voice -- "was possessed" -- the court's

-8-

inquiry is not focused on the defendant's conduct, but rather "possession by proximity"). The evidence before the Court indicates that the gun was possessed in relation to the offense. The Court concludes that Aguilar possessed the gun for purposes of § 2D1.1(b)(1) and therefore an upward adjustment is appropriate.

## II.      AGUILAR IS ELIGIBLE FOR THE "SAFETY VALVE" EXCEPTION.

Aguilar asserts that, even if she receives a § 2D1.1(b)(1) enhancement, she is eligible for the "safety valve" exception based on her individual conduct. The Court agrees. Unlike § 2D1.1(b)(1), § 5C1.2(a)(2) requires more than mere proximity to a firearm. The Court may consider "only the defendant's conduct, not the conduct of [her] co-conspirator." United States v. Zavalza-Rodriguez, 379 F.3d at 1186-87. In United States v. Zavalza-Rodriguez, the Tenth Circuit explained that § 5C1.2(a)(2) requires active possession: "a close connection linking the individual defendant, the weapon, and the offense." Id. at 1187. The evidence before the Court is that Aguilar did not own the gun, did not touch it, and had no intention of using it. Although she may have constructively possessed the gun, the Court cannot conclude that she actively possessed it. Because, under § 5C1.2(a)(2), Aguilar did not possess the firearm, she is eligible for the safety valve exception.

## III.     A MINIMAL/MINOR ROLE ADJUSTMENT IS APPROPRIATE.

Aguilar argues that she should receive an adjustment because she played a minimal role in the offense. The evidence before the Court, however, indicates that Aguilar knew Mendez sold drugs and knew they were traveling to New Mexico to pick up drugs. She understood that she was traveling with Mendez to provide cover. Based on Aguilar's knowledge and understanding of the offense, the Court cannot conclude that she played a minimal role.

The Court does believe, however, that Aguilar's role in the offense was significantly less than

Mendez' role.  She was not involved in, or aware of, the planning of the offense, and she was not receiving payment for her participation.  Aguilar did little more than ride along with Mendez, knowing that he was picking up drugs.  The Court therefore concludes that a three-level adjustment is appropriate because Aguilar was a minimal/minor participant in the offense.

## IV.   A GUIDELINE SENTENCE OF THIRTY-THREE MONTHS IS APPROPRIATE AND REASONABLE.

Aguilar argues that the Court should sentence her below the guideline range.  Aguilar's offense level is twenty and her criminal history category is I.  She is eligible for the safety valve exception, so her guideline imprisonment range is thirty-three to forty-one months.

As the transcript of this opinion reflects, the Court has carefully considered and calculated the Guidelines.  Specifically, the Court has considered the Guidelines' sentencing range established for the applicable category of offense committed by the applicable category of defendant.  In arriving at a sentence, however, the Court must not only take account of the Guidelines, but other sentencing goals.

After studying the facts of this case, and after taking all these factors into account, the Court believes that the punishment set forth in the Guidelines is appropriate for this sort of offense.  The Court then considered the kinds of sentence and range that the Guidelines establish.  The Court believes that a sentence of thirty-three months reflects the seriousness of the offense.  Aguilar is guilty of possessing with intent to distribute and conspiracy of 100 kilograms or more of marijuana.  This sentence also promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public and effectively provides the Defendant with needed training and care.  The sentence otherwise fully reflects each of the factors embodied in 18 U.S.C. Section 3553(a).  The

Court also believes the sentence is reasonable. The Court believes the sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in the Sentencing Reform Act.

**IT IS ORDERED** that Vanessa Aguilar is sentenced to a thirty-three months term of incarceration.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
    for the District of New Mexico
Nelson Spear
  Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Marc H. Robert
  Federal Public Defender's Office
Las Cruces, NM

   *Attorney for the Defendant*